UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LIFESCAN, INC., et al.,

        Plaintiffs,

v.

SHASTA TECHNOLOGIES, LLC, et al.,

        Defendants.

Case No.  12-cv-06360-JST

**ORDER GRANTING MOTION FOR A PRELIMINARY INJUNCTION**

Re: ECF Nos. 14, 90

      In this action for violations of the Lanham Act and related state laws, Plaintiffs LifeScan and Johnson & Johnson move under Federal Rule of Civil Procedure 65(a) for a preliminary injunction barring Defendants from using Plaintiffs' logos and trade dress on the packaging and advertisements for Defendants' competing product.  For the reasons set forth below, the motion is GRANTED.

## I.    BACKGROUND

### A.    The Parties

      Plaintiffs Johnson & Johnson and LifeScan, a subsidiary of Johnson & Johnson, bring this action for violations of the Lanham Act and California's Business and Professions Code against Defendants Shasta Technologies, Decision Diagnostics, PharmaTech Solutions, and Conductive Technologies.  The gravamen of the complaint is that Defendants' unauthorized use of Plaintiffs' logos and trade dress on the packaging and advertisements for Defendants' competing product creates the impression that LifeScan endorses or sponsors that product.

### B.    Plaintiffs' Products

      Plaintiffs make and sell meters and test strips that people with diabetes use to monitor the glucose levels in their blood.  Compl. ¶¶ 2, 22.  LifeScan has been in the blood-glucose-

1   monitoring industry since the mid-1980s, and it is the leading manufacturer and seller of

2   monitoring systems in the United States.  Lee Decl. ¶¶ 6-11.

3       **1.      OneTouch Brand**

4       Plaintiffs have sold meters and test strips under the OneTouch Ultra brand since 2001.

5   Compl. ¶¶ 2-3.  To test the glucose levels in a sample of blood with the OneTouch products, a user

6   inserts a test strip into the port of the meter, pricks her finger or forearm with a lancet to draw a

7   small amount of blood, and then places a drop of blood on the test strip.  The OneTouch meter

8   measures the flow of electrical current in the sample and then displays the glucose level of the

9   user's blood on the meter's digital display.  The user may decide to take further action to manage

10  the glucose level in her blood based on the meter's reading.  Id. ¶ 24.

11      More than five million consumers use the OneTouch products.  Id. ¶ 3.  Sales of OneTouch

12  meters and strips in the United States exceeded $1 billion dollars in 2011.  Id. ¶ 25.  LifeScan is

13  the leading brand in the blood-glucose testing market with a 30% market share.  Id. ¶ 26. Plaintiffs

14  allege that the OneTouch Ultra brand is the brand "most recommended" by doctors and

15  endocrinologists in the United States.  Id. ¶ 3.

16      Plaintiffs have made substantial investments in the OneTouch brand and products.  They

17  registered with the United States Patent and Trademark Office the marks "One Touch,"

18  "OneTouch," "Ultra," "UltraMini," and "LifeScan" for use in the context of blood-monitoring

19  devices.  Id. ¶ 29 & Ex. 2.  In the last ten years, they have spent over $100 million dollars in

20  promoting the OneTouch brand to consumers.  Id. ¶ 32.

21      **2.      OneTouch UltraMini Meter**

22      The OneTouch UltraMini is LifeScan's best-selling meter.  In 2012, it was the best-selling

23  meter in the industry with a 17% market share.  Id. ¶¶ 33-36.  The UltraMini is visually

24  distinctive; it is relatively small, narrow, horizontally oriented, has round corners, and comes in

25  six vibrant colors.  Id. ¶¶ 33-36.

26

27  

28

United States District Court
Northern District of California

A market survey conducted in 2007 showed that 91% of users of the UltraMini were "highly satisfied" or "completely satisfied" with the device.  Id. ¶ 38.  The same survey showed that the distinctive appearance of the UltraMini was one of consumers' top three reasons for purchasing the meter.  Id.

**C.   Relevant Industry**

The prevailing norm in the industry is that the same company that makes a meter also makes the test strips that can be used with that meter.  Id. ¶ 52.  Generally, the test strips of one company are not compatible with the meters of a competitor.

Plaintiffs allege that, because of this norm, consumers expect that the company that produces test strips for a certain meter is associated with the company that produces that meter. Id. ¶ 54.  Shasta is the first company to make test strips that are intended to be used with a competitor's testing meter.  Id. ¶ 53.

**D.   Defendants' GenStrip**

Defendant Shasta recently developed the GenStrip, a test strip intended to be used only in conjunction with certain of Plaintiffs' OneTouch meters.  Id. ¶¶ 4, 41.  Shasta has a manufacturing and distribution agreement with Defendants PharmaTech, Decision Diagnostics, and Conducive with respect to the GenStrip.  Id. ¶¶ 42, 43.  Plaintiffs allege that the GenStrip is the first "proprietary product" that Defendants have brought to market.  Id. ¶ 7.

Defendants obtained FDA approval on November 30, 2012, to market the GenStrip for use with certain of Plaintiffs' One Touch meters, namely the OneTouch Ultra, OneTouch Ultra 2, and OneTouch UltraMini "purchased before July 2010."  Id. ¶¶ 6, 47 & Ex. 1.  The GenStrip has been approved only with respect to calibration codes 4, 10, and 13.  Id., Ex. 1.

Defendants advertise the GenStrip online on various websites, including: (1) PharmaTech's website; (2) Shasta's website; (3) Decision Diagnostic's website; and (4) PharmaTech's Facebook page.[1]  Id. ¶ 56.  The advertisements on the Shasta and PharmaTech

---

[1] Plaintiffs claim that Defendants altered their websites after Plaintiffs expressed their intention to bring this suit.  The exhibits attached to the Lee Declaration are prior versions of the websites. Lee Supp. Decl. ¶ 3; Williams Decl. ¶¶ 5, 7.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

websites and the advertisement on the PharmaTech Facebook page contain images of the packaging in which Defendants intend to sell the GenStrip.

The box features an image of a GenStrip being inserted into a purple OneTouch UltraMini meter. Id. ¶¶ 57, 58. The image of the UltraMini meter accounts for about 25% of the front of the box. The image includes the OneTouch UltraMini logo on the UltraMini meter and what appears to be a "seal of approval" directly above the UltraMini meter. Id. ¶¶ 57-62.

Shasta's website repeatedly mentions LifeScan and contains links to LifeScan's website embedded in the phrase "Click here to register your LifeScan meter." Id. ¶¶ 61-63. Plaintiffs allege that these actions imply that LifeScan is affiliated with or endorses the GenStrip. Id. ¶ 63.





GenStrip's packaging[2]                    Shasta's website[3]

Defendants have sold 60,000 GenStrip units, but they have not shipped these units because of the pendency of this action.[4]

**E. Plaintiffs' Claims**

Plaintiffs allege that Defendants' unauthorized use of their logos and trade dress on the packaging and advertisements for the GenStrip falsely suggests to consumers that LifeScan endorses the GenStrip. Plaintiffs claim that this false association will cause irreparable damage to LifeScan's goodwill and reputation, as the use of the GenStrip in conjunction with the OneTouch meters is likely to result in inaccurate readings and consumer dissatisfaction, which consumers are

---

[2] The image of the GenStrip's packaging was obtained from Defendants' Opposition. ECF No. 49 at 22.
[3] The image of Shasta's website was obtained from Ty Lee's Declaration. ECF No. 15 ¶ 45.
[4] In the briefing pertaining to this motion, the parties state that Defendants have not begun to package or sell the GenStrip. During oral argument on May 16, 2013, Defendants provided updated sales information to the Court at the Court's request.

likely to attribute to LifeScan.

Plaintiffs bring five claims against Defendants: (1) false advertisement in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) false endorsement in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) infringement of a registered mark in violation of the Lanham Act, 15 U.S.C. § 1114; (4) false advertising in violation of California's Business and Professions Code §§ 17500-17509; and (5) unfair competition in violation of California's Business and Professions Code §§ 17200-17210.

**F.     Jurisdiction**

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, and 1367.

## II.     STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). All four elements of this test ("the Winter test") must be satisfied before the court can issue a preliminary injunction. Id.; Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) (holding that Winter "requires the plaintiff to make a showing on all four prongs"). The Ninth Circuit has made clear that, after Winter, "to the extent [its] cases have suggested a lesser standard, they are no longer controlling, or even viable." Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (citation omitted). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. at 24 (citations and internal quotation marks omitted).

//

//

United States District Court
Northern District of California

United States District Court
Northern District of California

### III.   DISCUSSION

Plaintiffs move under Federal Rule of Civil Procedure 65(a) for a preliminary injunction barring Defendants from using Plaintiffs' logos and trade dress on the packaging or advertisements for the GenStrip.  ECF No. 14.  Because Plaintiffs have made a clear showing on each of the four elements of the <u>Winter</u> test, their motion is GRANTED.

### A.   Likelihood of Success on the Merits

Plaintiffs bring claims under the Lanham Act for (1) false advertising, (2) false endorsement, and (3) infringement of a registered mark.  They also bring claims under California's Business and Professions Code for false advertising and unfair competition.  Plaintiffs withdrew their request for a preliminary injunction on the federal and state claims for false advertising.  <u>See</u> Reply at 13, ECF No. 60, Ex. 1.[5]  Accordingly, the Court considers the merits of the claims for false endorsement and trademark infringement under the Lanham Act, and unfair competition under California law, only.

The elements that Plaintiffs must establish with respect to each of these three claims are essentially the same:  (1) that Plaintiffs have a protectable interest in the marks or trade dress at issue, and (2) that Defendants' use of the marks or trade dress has created a likelihood of consumer confusion.  Of these two elements, the "likelihood of consumer confusion is the determinative issue."  <u>See</u> <u>Cairns v. Franklin Mint Co.</u>, 292 F.3d 1139, 1149 (9th Cir. 2002) ("Under the law of false endorsement, likelihood of customer confusion is the determinative issue.") (citation omitted); <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1178 (9th Cir. 1988) (holding that for both trademark infringement under the Lanham Act and unfair competition under California law, "the crucial issue is whether the defendant's use of the plaintiff's service mark or trade name creates a likelihood of confusion for the public") (citation and internal quotation marks omitted).

Here, the first element is met.  Defendants do not dispute that Plaintiffs have a protectable

---

[5] Plaintiffs move to seal portions of their Reply on the ground that Defendants designated certain information in the Reply as confidential under a protective order in another action.  <u>See</u> ECF No. 60.  Because the information at issue is protectable as a trade secret, the motion is GRANTED.

interest in the marks asserted in the complaint and in the stylized version of those marks.  And, although Defendants challenge the protectability of the trade dress for the OneTouch UltraMini on the basis that some aspects of its design are functional, Plaintiffs have shown that the design of the UltraMini trade dress, when taken as a whole, is distinctive and non-functional and is therefore protectable.  See Reply at 13, ECF No. 60, Ex. 1 (arguing that the UltraMini's trade dress is protectable based on its "total image," which includes "the UltraMini's exact sleek, oval shape and dimensions; its precise bright colors; the concentric ovals – one black and one colored – on the face of the product; and the OneTouch UltraMini logo and its placement on the face of the meter"); see also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 823 (9th Cir. 1993) (noting that a plaintiff claiming a violation of the Lanham Act must show, among other things, that the trade dress at issue is non-functional and holding that the functionality "inquiry is not directed at whether the individual elements are functional but whether the whole collection of elements taken together are functional").

As to the second element, courts in this circuit use the nominative fair use test to evaluate the likelihood of confusion in situations where the defendant uses the plaintiff's mark, logo, or trade dress to refer to the trademarked good itself.  Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F.3d 1171, 1176 (9th Cir. 2010) (citations omitted); see also Cairns, 292 F.3d at 1151 ("The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product.") (citation omitted).  The parties agree that the nominative fair use test is the proper framework for evaluating the likelihood of confusion in this case.  Plaintiffs bear the burden of establishing that Defendants' conduct is likely to cause confusion under the nominative fair use test.  See Tabari, 610 F.3d at 1182 ("A finding of nominative fair use is a finding that the plaintiff has failed to show a likelihood of confusion as to sponsorship or endorsement."); KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 118 (2004) (holding that the Lanham Act places the "burden of proving likelihood of confusion . . . on the party charging infringement").

//

1    To prevail under the nominative fair use test, a plaintiff must show that the defendant's

2    conduct fails to meet at least one of the following three elements: (1) the product at issue is not

3    readily identifiable without the use of the plaintiff's mark; (2) only so much of the mark was used

4    as is reasonably necessary to identify the product at issue; and (3) the defendant did nothing that

5    would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff. New

6    Kids on the Block v. News America Pub., Inc., 971 F.2d 302, 308 (9th Cir. 1992).

7    As will be discussed below, Plaintiffs make a clear showing that Defendants' use of their

8    logos and trade dress fails to meet the second and third elements of the nominative fair use test,

9    which establishes that Plaintiffs are likely to succeed on the merits. Accordingly, the Court

10   concludes that the first factor of the Winter test weighs in Plaintiffs' favor.

**1.      Not Readily Identifiable**

12   The parties agree that this element is met, because Defendants must use Plaintiffs'

13   registered words to reference the OneTouch meters, as no descriptive substitute exists.

**2.      Not More than Reasonably Necessary**

15   Plaintiffs concede that Defendants may use the text of their registered marks to refer to the

16   OneTouch meters under the nominative fair use doctrine. Thus, the issue is whether Defendants

17   also may use (1) Plaintiffs' OneTouch logos and stylized lettering, and (2) the trade dress for the

18   OneTouch UltraMini meter.

**a.      Logos and Stylized Lettering**

20   The nominative fair use doctrine permits the use of the plaintiff's marks only as is

21   "reasonably necessary to identify the plaintiff's product." New Kids, 971 F.2d at 308. Though

22   the Ninth Circuit has cautioned that "[w]hat is reasonably necessary to identify the plaintiff's

23   product differs from case to case," it has provided illustrative examples of the type of conduct that

24   the nominative fair use doctrine is intended to protect. Cairns, 292 F.3d at 1154 (citations and

25   internal quotation marks omitted). For example, in New Kids, the Ninth Circuit explained that

26   under the nominative fair use doctrine, "a soft drink competitor would be entitled to compare its

27   product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering."

28   971 F.2d at 308, n.7.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

The Ninth Circuit repeatedly has held that a defendant's use of the "visual trappings" of the plaintiff's brand in addition to its use of the plaintiff's registered mark goes beyond what is reasonably necessary to identify the plaintiff's product.  See, e.g., Tabari, 610 F.3d at 1181 (9th Cir. 2010) (holding that the defendants' use of the plaintiff's stylized mark and logo "was more use of the mark than necessary and suggested sponsorship or endorsement by [the plaintiff]" because defendants "could adequately communicate their message without using the visual trappings of the [plaintiff's] brand").

Additionally, whenever the Ninth Circuit has held that the defendant's use of the plaintiff's mark was not more than is reasonably necessary, the basis for the holding has been that the defendant *did not* use the plaintiff's logos or stylized lettering in conjunction with the plaintiff's mark.  See New Kids, 971 F.2d. at 308 (holding that defendants' use of the plaintiff's mark was not more than reasonably necessary because defendants "do not use the [plaintiff's] distinctive logo or anything else that isn't needed to make the announcements intelligible to readers"); Playboy, 279 F.3d at 802 (holding that the defendant's use of the plaintiff's registered mark was not more than reasonably necessary because she "use[d] only the trademarked words, not the font or symbols associated with the trademarks"); Volkswagen Aktiengesellschaft v. Church, 411 F.2d 350, 352 (1969) (holding that the defendant's use of the plaintiff's mark did not constitute unfair competition in part because he "did not use [the plaintiff's] distinctive lettering style or color scheme, nor did he display the [plaintiff's] . . . emblem").

Here, Defendants argue that their use of Plaintiffs' logos and stylized lettering is protected under the nominative fair use doctrine because it is necessary to show the compatibility of the GenStrip with the OneTouch meters.[6]  Plaintiffs counter that this use does not fall within the nominative fair use doctrine because words alone can convey Defendants' intended message.

In light of the authority discussed above, the Court concludes that Plaintiffs have met their burden to show that Defendants' use of their logos and stylized lettering is more than is reasonably

---

[6] Defendants move to seal portions of their joint opposition, certain exhibits attached to John Shaeffer's Declaration, and Keith Berman's Declaration and its exhibits.  ECF Nos. 28, 48. Because the information that Defendants seek to seal is protectable as a trade secret, the motion is GRANTED.

necessary, as the words of Plaintiffs' marks alone could inform consumers that the GenStrip is compatible with the OneTouch meter.  The evidence presented by Plaintiffs shows not only that Defendants use Plaintiffs' logos and stylized lettering on the packaging and online advertisements for the GenStrip, but also that such use is relatively prominent.  See Compl. ¶¶ 57-62.  Defendants have not adequately explained why using Plaintiffs' registered words alone would be insufficient to convey the message to consumers that the GenStrip is intended to be used with the OneTouch meter.  The only explanation that Defendants have offered on this issue is that some consumers who do not read English—either because they are not conversant with the English language, or because they are illiterate—may need to see Plaintiffs' logos to understand that the GenStrip is supposed to be used with the OneTouch meter.[7]  Defendants admitted during oral argument, however, that this argument is unsupported by authority.  Moreover, if the Court were to adopt this argument, it would essentially eviscerate the nominative fair use test, since for a non-English-reading audience, no defendant "could [ever] adequately communicate [its] message without using the visual trappings of the [plaintiff's] brand."  Tabari, 610 F.3d at 1181.  Accordingly, Defendants' use of Plaintiffs' logos and stylized lettering does not satisfy the second element of the nominative fair use test.

### b.      Images of the OneTouch UltraMini

The greatest source of contention between the parties is Defendants' use of an image of a purple OneTouch UltraMini meter on the packaging and online advertisements for the GenStrip.

Plaintiffs argue that Defendants' use of this image is more than is reasonably necessary under the nominative fair use doctrine for the same reasons that Defendants' use of their logo and stylized lettering is more than is reasonably necessary.  Plaintiffs contend that the authorities discussed in the previous section also apply to the use of images of a plaintiff's trade dress, and that such authorities compel a finding that Defendants' use of the UltraMini trade dress is not nominative fair use.  In support of their argument, Plaintiffs point to the packaging of the GenStrip and note that the UltraMini is the packaging's most prominent element, as it accounts for

---

[7] Defendants provided this explanation during oral argument.

1   approximately 25% of the front of the box.  Plaintiffs also point to print-outs of Defendants'

2   websites, which feature relatively large pictures of the OneTouch UltraMini.  Plaintiffs contend

3   that the images of the UltraMini are not necessary to sell test strips, as LifeScan does not include

4   an image of the meter on the packaging of its highly lucrative OneTouch strips.[8]

  

12          In response, Defendants contend that some consumers who do not read English may need

13   to see an image of the UltraMini to understand that the GenStrip is supposed to be used with that

14   meter.[9]  But, as discussed above, this argument is unsupported by authority and inconsistent with

15   the nominative fair use doctrine.

16          In their briefing, Defendants cite three cases for the proposition that "courts consistently

17   refuse to find that a visual depiction of a plaintiff's product alone establishes a likelihood of false

18   endorsement."[10]  Opp'n at 16.  These cases are inapposite.

19          The first case, <u>Mattel v. Walking Mountain Productions</u>, involves the use of a trademarked

---

[8] The images of LifeScan's test strip packaging and of the GenStrip packaging were obtained from Defendants' Opposition.  ECF No. 49 at 22.

[9] Defendants provided this argument at the hearing on this motion.

[10] During oral argument, Defendants cited <u>Smith v. Chanel, Inc.</u> for the proposition that Defendants may use Plaintiffs' marks, logos, and trade dress in advertisements to refer to Plaintiffs' products for the purpose of competing with such products.  402 F.2d 562 (9th Cir. 1968).  <u>Smith</u> is inapposite, however, because its holding applies only to advertisements that do not "create a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of the advertisers [sic] product."  <u>Id.</u> at 563.  In <u>Smith</u>, the purpose of the defendant's advertisements was to make clear that its product was <i>not</i> the perfume Chanel No. 5, but instead a much cheaper knock-off called "Second Chance."  The advertising explicitly distinguished the products from each other such that there could be no risk of confusion.  <u>Ibid</u>.  The advertisements here, by contrast, are likely to create consumer confusion as to the source or sponsorship of the GenStrip.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    image of Barbie's torso and head in artistic photographs that critique the objectification of women.

2    353 F.3d 792 (9th Cir. 2003).  The Ninth Circuit held that the defendant's use of Barbie's torso

3    and head in the photographs was reasonably necessary under the second prong of the nominative

4    fair use test.  Id. at 811.  The court reasoned that "[g]iven the photographic medium and [the

5    defendant's] goal of representing the social implications of Barbie, including issues of sexuality

6    and body image, [the defendant's] use of the Barbie torso and head is both reasonable and

7    necessary.  It would be very difficult for the defendant to represent and describe his photographic

8    parodies of Barbie without using the Barbie likeness."  Id.

9         This case does not support Defendants' use of the image in question because Defendants

10   do not use the image in the context of art or social critique and because Defendants have not

11   adequately shown that it would be difficult for them to convey their intended message to

12   consumers without the use of the image.

13        The second case, Cairns v. Franklin Mint Company, involves the use of the likeliness of

14   Princess Diana on collectibles.  292 F.3d 1139 (9th Cir. 2002).  The Ninth Circuit held that this

15   use was reasonably necessary under the second prong of the normative fair use test because "there

16   is no allegation that [the defendant] used any distinctive lettering or any particular image of

17   Princess Diana intimately associated with the [plaintiff]" and because "it is doubtful whether [the

18   defendant] would be able to sell its [collectibles] without prominent reference to Princess Diana."

19   Id. at 1154.

20        This case also does not support Defendants' use of the image at issue because that image

21   is intimately associated with Plaintiffs and because the marketability of the GenStrip is not

22   dependent on a visual reference to the UltraMini meter.  Indeed, Defendants provide no evidence

23   or even argument to show that the GenStrip would not sell unless an image of the UltraMini meter

24   is included on its packaging.  On the other hand, Plaintiffs have shown that the use of a meter's

25   image on the packaging of test strips is not necessary to sell test strips.

26        The third case, Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc., involves the use

27   of an image of a perfume sold by Calvin Klein under the label "Obsession" on the packaging and

28   in-store displays of the defendant's imitation of that perfume.  815 F.2d 500 (8th Cir. 1987).  The

12

Eight Circuit reversed the district court's issuance of a preliminary injunction barring the defendant from using the packaging and displays at issue in part because the district court based its decision solely on its own, unaided visual inspection of the defendant's packaging and store displays, and "failed to take into account sufficient evidence on which to base its determination of Calvin Klein's probable success on the merits."  Id. at 504.

This case does not support Defendants' use of the image at issue because nothing about it establishes that a defendant may use images of the trade dress of another party to advertise its own products.  Rather, the case turned on the district court's reliance on insufficient evidence in reaching its conclusions regarding consumer confusion.

Based on the foregoing, the Court concludes that Plaintiffs have shown that Defendants' use of an image of the OneTouch UltraMini meter on the GenStrip's packaging and advertisements is more than is reasonably necessary.  Accordingly, Defendants' conduct does not meet the second element of the nominative fair use test.

### 3.    Suggestion of Sponsorship or Endorsement

Plaintiffs argue that Defendants' use of their logos and trade dress on the packaging and advertisements for the GenStrip suggests to consumers that LifeScan endorses or sponsors the GenStrip.  While Plaintiffs offer substantial evidence and argument on this issue, Defendants provide neither evidence nor persuasive argument in response.

### a.    Expert Testimony

Plaintiffs cite to the opinion of branding expert Dr. Erich Joachimsthaler. Dr. Joachimsthaler has opined that Defendants' use of the visual cues that consumers associate with the OneTouch brand "creat[es] the impression that GenStrip is either manufactured by, authorized by, endorsed by, or in some manner associated with OneTouch."  ECF No. 15, Joachimsthaler Decl. ¶¶ 32-44 (opining that the "OneTouch brand has strong equity and positive associations as translated in the form of" its "visual cues," such as its logo and "product form and color"; that  Defendants' prominent use of these cues "link[s]" the GenStrip brand "to OneTouch" and "creat[es] the impression that GenStrip is either manufactured by, authorized by, endorsed by, or in some manner associated with OneTouch").  Dr. Joachimsthaler's opinion is based on market

research conducted by LifeScan prior to this dispute, his own academic research on branding, and his two decades of experience as a branding expert. ECF No. 61, Williams Decl., Ex. 8, Joachimsthaler Dep. 48-50.

Defendants argue that Dr. Joachimsthaler's opinions must be excluded by the Court because they are "irrelevant and inadmissible" and not "informed by any market research or empirical data." Opp'n at 18 n. 14, ECF No. 49. Defendants appear to base this argument on the fact that Dr. Joachimsthaler did not conduct a survey of consumers regarding the GenStrip before formulating his opinions. Notably, Defendants do not dispute the facts underlying Dr. Joachimsthaler's opinions or Dr. Joachimsthaler's qualifications as an expert.

Defendants' objections to Dr. Joachimsthaler's testimony are unfounded and insufficient to exclude it. That Dr. Joachimsthaler did not conduct a survey pertaining to consumer confusion in this case is not dispositive as to the admissibility of his testimony, because his opinions are founded on his significant experience in the field, his academic research, and the market research that LifeScan itself has conducted over the years. See ECF No. 61, Williams Decl., Ex. 8, Joachimsthaler Depo. 48-50; see also Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1050 (9th Cir. 1999) ("The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy."). Moreover, the standard for the admissibility of evidence presented for the purpose of a motion for a preliminary injunction is not high. See Flynt Distrib. Co., Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984) (holding that because the "urgency of obtaining a preliminary injunction necessitates a prompt determination . . . [t]he trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial"). Plaintiffs have shown that Dr. Joachimsthaler's opinions satisfy this admissibility standard.

The Court finds Dr. Joachimsthaler's opinions to be persuasive on the issue of consumer confusion and sponsorship, particularly given that Defendants offer no expert testimony or other evidence to rebut them. Based on Dr. Joachimsthaler's testimony, and given that Plaintiffs have shown that Defendants use their logos and trade dress more than is reasonably necessary, the

United States District Court
Northern District of California

14

1   Court concludes that a reasonable consumer is likely to believe that LifeScan sponsors or endorses

2   the GenStrip.  See Tabari, 610 F.3d at 1176 ("Consumers may reasonably infer sponsorship or

3   endorsement if a company uses an unnecessary trademark or more of a mark than necessary.").

**b.    Disclaimers**

5          Plaintiffs argue that the disclaimers that Defendants use on the packaging and

6   advertisements for the GenStrip are ineffective in negating any suggestion of sponsorship or

7   endorsement, as the disclaimers are not sufficiently prominent.[11]  The Court agrees.

8          The Ninth Circuit has held that a disclaimer may be effective in eliminating the perception

9   of endorsement or sponsorship when such a disclaimer is featured prominently and in close

10  proximity to the plaintiff's mark or trade dress.  See, e.g., Tabari, 610 F.3d at 1181-82 (holding

11  that visitors to the defendants' website, which contained a disclaimer located *at the top* of the page

12  that stated "*prominently and in large font*" that the defendants' business was not affiliated with the

13  plaintiff, "would promptly be disabused of any notion that the [defendants'] website is sponsored

14  by [the plaintiff]") (emphasis added); Volkswagenwerk, 411 F.2d at 352 (holding that the

15  defendant's "*prominent* use of the word 'Independent' *whenever* the [plaintiff's marks] appeared

16  in his advertising was sufficient to distinguish his business to the eye of the customer") (emphasis

17  added).

18         Here, the disclaimers that Defendants have included on the GenStrip's packaging and

19  advertisements are neither prominent nor located near Plaintiffs' marks or trade dress.[12]

20

21

22

23

24

25

26  [11] There appears to be some disagreement between the parties as to the date on which Defendants

27  first included a disclaimer on the packaging and advertisements for the GenStrip.  As this dispute
    does not affect the outcome of Plaintiffs' motion, the Court does not resolve it here.

28  [12] The images of the disclaimers were obtained from Defendants' Opposition.  They are not to
    scale.  ECF No. 49 at 2.

United States District Court
Northern District of California

1

2

  

3

4

5

6

7

8

9          The first disclaimer is located on the top of the GenStrip's packaging; the top of the box

10   measures 2.5 inches by 1.6 inches.[13]   See ECF No. 51, Kanach Decl., Ex. A.  Though the

11   disclaimer accounts for approximately 50% of the surface area of the top of the box, the size of the

12   disclaimer's font is quite small given that the top of the box itself is small.  Moreover, Plaintiffs'

13   logos and trade dress are featured on the front of the box, not on the top of the box.  Defendants

14   provide no explanation for not including the disclaimer on the front of the box, where consumers

15   are most likely to see it.

16          The second disclaimer is printed on the vial that contains the GenStrip test strip itself.  The

17   disclaimer is illegible in the form presented to the Court, as the font is extremely small.  Opp'n at

18   2, Fig. 2, ECF No. 49.

19          The third disclaimer is a statement printed on the bottom of the GenStrip's packaging.[14]

20   Opp'n at 2, Fig. 3, ECF No. 49.

21          The fourth disclaimer is located on the bottom of Defendants' websites.  Compl., Ex. 6.

22   The font size of the disclaimer is small, and the disclaimer itself is not near Plaintiffs' logos or

23   trade dress or the links to LifeScan's website.[15]   Id., Ex. 8.

24   _____

25   [13] The first and fourth disclaimers contain the following language: "GenStrip™ test strips are a
     product of Shasta Technologies, LLC and are not manufactured, distributed, endorsed, or
26   approved by nor associated with LifeScan®, Inc. a Johnson & Johnson® Company, manufacturers
     and distributors of the OneTouch® Ultra® Family of Meters and OneTouch® Ultra® test strips."
27   [14] The disclaimer provides that the "OneTouch®, Ultra®, Ultra®2, & UltraMini® are registered
     trademarks of LifeScan®, Inc. a Johnson & Johnson® Company.  GenStrip® is a trademark of
28   Shasta Technologies, LLC."  Opp'n at 2, Fig. 3, ECF No. 49.
     [15] The image of Shasta's website was obtained from Ty Lee's Declaration, ECF No. 15, Ex. 6.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11

12
13
14
15
16
17



18    The Court concludes that each of these disclaimers is too small or too far away from

19  Plaintiffs' logos and trade dress to be effective in dispelling any consumer confusion.  Defendants

20  provide no explanation as to why the disclaimers are not located near Plaintiffs' logos and trade

21  dress or why the disclaimers are not featured more prominently.  Further, Defendants cite to no

22  authority that establishes that a disclaimer that is not featured prominently would be effective in

23  negating the appearance of sponsorship or endorsement in the context of the nominative fair use

24  doctrine.

25  //

26  //

27

28  The disclaimer is at the very bottom of the webpage.

Accordingly, Defendants' conduct does not meet the third element of the nominative fair use test.[16]

**B.     Likelihood of Irreparable Harm**

This factor weighs in Plaintiffs' favor.[17]

In the context of a preliminary injunction, irreparable harm is established when a plaintiff is unlikely to be made whole by an award of monetary damages or some other legal remedy at a later date. See Sampson v. Murray, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

Plaintiffs contend that they have built a strong reputation and accumulated a significant amount of goodwill as a result of their substantial investments in the OneTouch brand, and that this reputation and goodwill will be harmed by Defendants' unauthorized use of their logos and trade dress in a way that cannot be remedied later.[18]  This injury will arise when consumers who believe that LifeScan endorses the GenStrip will attribute to LifeScan any problems or dissatisfaction they experience while using the GenStrip.

Plaintiffs have submitted declarations from LifeScan's vice president of marketing and

---

[16] During oral argument, Defendants argued that their use of the UltraMini trade dress is not actionable because a blog post submitted by Plaintiffs shows that the blog writer recognized that the GenStrip is a generic alternative to the OneTouch strips.  This single blog post is of limited statistical value.  Moreover, the question of whether consumers believe that the GenStrip is a generic alternative is not dispositive of the relevant inquiry under the nominative fair use test, which is whether Defendants' use of Plaintiffs' logos and trade dress is likely to suggest endorsement or sponsorship.

[17] After the briefing on this motion was completed, Defendants moved to file a surreply in support of their opposition to Plaintiffs' motion and to seal certain portions of the surreply.  ECF Nos. 75, 76.  Plaintiffs then moved to file a response to the surreply and to seal certain portions of the response.  ECF No. 77.  Each of these motions is GRANTED.  Although the court ordinarily would not consider a surreply, the issues at stake in Plaintiffs' motion for a preliminary injunction are of sufficient importance that granting leave is appropriate.  Additionally, the Court concludes that the matters sought to be sealed are protectable as trade secrets.  The Court finds, however, that the matters contained in the surreply do not affect either the Court's analysis or conclusion, set forth infra, that Defendants' use of Plaintiffs' distinctive logos, stylized lettering, and trade dress will cause Plaintiffs to suffer irreparable harm if an injunction is not issued.

[18] LifeScan has spent over $100 million dollars promoting the OneTouch Utra brand in the last ten years.  Compl. ¶¶ 13-15.

United States District Court
Northern District of California

from Dr. Joachimsthaler, a branding expert, to establish that LifeScan has a strong reputation and considerable goodwill in the industry, and that OneTouch consumers perceive the OneTouch systems to be accurate, trustworthy, and easy to use.[19]  Lee Decl. ¶¶ 25-26; Supp. Lee Decl., Ex. A ¶ 24; Joachimsthaler Decl. ¶¶ 22-36.

The same declarations state that GenStrip users are likely to experience problems and dissatisfaction because they will need to adjust the calibration code of the OneTouch meter before inserting a GenStrip into it.  Since 2009, OneTouch meters have been pre-calibrated to match the calibration code of OneTouch test strips; for this reason, OneTouch users are accustomed using their meters without having to recalibrate their meters each time they use them.  The OneTouch meter is pre-calibrated to a code that does not match the calibration codes of the GenStrip. According to the declarations cited above, it is likely that some consumers will not recalibrate their meter before inserting the GenStrip into it, which may result in inaccurate readings.  It also is likely that consumers who do recalibrate their meter may experience dissatisfaction with having to take this additional step.  In both of these scenarios, Plaintiffs' goodwill and reputation is likely to suffer if users believe that LifeScan endorses the GenStrip, because such users could blame their problems or dissatisfaction with the GenStrip on LifeScan.  Lee Decl. ¶¶ 63-75; Joachimsthaler Decl. ¶¶ 41, 44.  Additionally, Plaintiffs will have to divert financial resources (more than $15 per call) to responding to consumers who try to call LifeScan for assistance with their GenStrip-related issues.  Lee Decl. ¶¶ 63-69.

The Court concludes that Plaintiffs have made a clear showing that they are likely to suffer irreparable harm absent an injunction.  Plaintiffs convincingly argue that the perception of endorsement that Defendants have created with their use of Plaintiffs' logos and trade dress is likely to lead consumers to blame LifeScan for any problems or dissatisfaction they experience when using the GenStrip.  The Court is persuaded that consumers are likely to experience problems or dissatisfaction because OneTouch consumers are not accustomed to having to change

---

[19] Separate from their opposition, Defendants filed evidentiary objections to these declarations. See ECF Nos. 52, 53.  Because Civil Local Rule 7-3(a) requires that "[a]ny evidentiary and procedural objections to the motion . . . be contained within the [opposition] brief or memorandum," the Court does not consider these objections.

United States District Court
Northern District of California

1    the calibration code of the OneTouch meters. Though the OneTouch and GenStrip user manuals

2    contain information pertaining to calibration, the Court is not convinced that the manuals are

3    likely to reduce the probability that consumers will experience problems and dissatisfaction

4    because there is no evidence on the record showing that consumers actually read these manuals.[20]

5        Defendants attempt to undermine Plaintiffs' argument of irreparable harm by contending

6    that Plaintiffs delayed in filing this lawsuit. The Court is not persuaded by this argument given

7    that Plaintiffs filed suit two weeks after the FDA approved the GenStrip for sale on November 30,

8    2012, which is the date on which their claims against Defendants became ripe. See SunEarth, Inc.

9    v. Sun Earth Solar Power Co., Ltd., 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) (noting that

10   "unreasonable delay in a trademark infringement case is measured from when the plaintiff knew or

11   should have known about its potential cause of action").

12   **C.    Balance of the Equities**

13       The equities weigh strongly in Plaintiffs' favor.

14       Plaintiffs argue that, absent an injunction, their goodwill and reputation would suffer great

15   and irreparable harm for the reasons set forth in the previous section. They further contend that if

16   the Court issues the requested injunction, the only harm that Defendants would suffer is the

17   inconvenience of having to change the design of the GenStrip packaging and online

18   advertisements.

19       Defendants argue that the injunction would exclude them from the test-strip market, which

20   in turn would cause them to suffer "massive monetary losses." Opp'n at 31, ECF No. 49.

21       The Court finds that, on the one hand, Plaintiffs have made a clear showing of potential

22   harm to the reputation and goodwill that they have garnered over the years. On the other hand,

23   Defendants have not made any credible argument that an injunction would cause them harm.

24   First, Defendants mischaracterize the scope of the requested injunction, which in no event would

25   prevent them from selling the GenStrip. Second, Defendants do not provide any evidence or even

26

27   _____

28   [20] During oral argument, Defendants provided to the Court a sample of the GenStrip's manual for its review. The font used in the GenStrip's instruction manual is miniscule, and the Court had difficulty locating the information on calibration.

United States District Court
Northern District of California

1 argument to show that it would be costly or time-consuming for them to change the packaging and

2 advertisements at issue.  Finally, Defendants have been on notice of Plaintiffs' claims since at

3 least December 2012, when this action was filed.  Despite the pendency of this lawsuit,

4 Defendants have continued to market the GenStrip by using the same advertisements and

5 packaging that Plaintiffs have accused of violating the Lanham Act.  Because Defendants have

6 chosen to assume the risk of having to incur the expense of changing the packaging and

7 advertisements at issue in the event that Plaintiffs' request for an injunction is granted, any

8 expenses resulting from the issuance of the requested injunction would not be unjustified.

9 **D.      Public Interest**

10        Lastly, Plaintiffs have shown that the issuance of an injunction would be in the public

11 interest.

12        Plaintiffs argue that the injunction they request would serve the public because the public

13 has the right not to be deceived.  On the other hand, Defendants argue that the issuance of the

14 injunction would deprive diabetics of a lower-priced alternative to Plaintiffs' test strips.

15        The Court concludes that the injunction would not deprive the public of Defendants' test

16 strips or of the increased competition that Defendants' new product will bring to the industry.

17 Rather, the injunction would reduce consumer confusion by removing misleading advertisements

18 and packages from the marketplace, which is in the public interest.  See TrafficSchool.com v.

19 Edriver Inc., 653 F.3d 820, 827 (9th Cir. 2011) ("the Lanham Act is at heart a consumer protection

20 statute").  Defendants will remain free to market their lower-priced alternative, albeit without the

21 packaging and advertising that gave rise to this lawsuit.

22                        **IV.      CONCLUSION**

23        Plaintiffs' motion for a preliminary injunction is GRANTED.  As of the date of this Order,

24 Defendants shall not:

25        1.      Use any image of Plaintiffs' OneTouch meters on the packaging, labels, or

26 advertisements for the GenStrip, whether online or not; or

27        2.      Use Plaintiffs' OneTouch logos or stylized font on the packaging, labels, or

28 advertisements for the GenStrip, whether online or not.

United States District Court
Northern District of California

Additionally, Defendants are enjoined from shipping to consumers the 60,000 GenStrip units that they have sold without first removing the packaging containing Plaintiffs' logos and trade dress.

**IT IS SO ORDERED**.

Dated: May 21, 2013

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California